## KARRICK *v.* HANNAMAN.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 12. Argued October 27, 28, 1896. — Decided November 29, 1897.

A partner who, within the term stipulated in the articles of partnership for its continuance, undertakes, of his own will, and without the consent of his copartner, to dissolve the partnership, takes exclusive possession of its property and business, profitably carries on the business with the property for his own benefit, and excludes his copartner from any participation in the business or the profits, is liable (whether the partnership should or should not be considered as having been dissolved by his acts) to account to the copartner for his share of the property and of the profits of the partnership, according to the partnership agreement.

THIS was a suit brought April 17, 1890, in the third judicial district court of the Territory of Utah, by Hannaman against Karrick for the dissolution of a partnership, formed February 3, 1886, by an agreement in writing, by which they agreed to become partners in a mercantile and laundry business for the term of five years from that date, with a capital stock of $25,000, of which the plaintiff was to furnish $5000, and the defendant $20,000; the defendant lent the plaintiff the sum of $5000 for five years, for which the plaintiff gave a promissory note, payable at the end of that time, and secured by mortgage upon his interest in the partnership property; the plaintiff was to give his entire time and attention to the partnership business, and the defendant was to devote to it only such time as he should see fit; the plaintiff to have the control and management of the business generally and entirely, except as the defendant might designate, and such matters to be subject to mutual agreement; one half of the

net profits of the business to go to the defendant in repayment of $15,000 of the capital stock furnished by him, and the other half to be allowed to remain in the business, except that each partner might draw out not exceeding $125 a month for personal expenses; the profits and losses to be shared equally, and neither party to have any other salary or compensation for services; and the title and interest of the partners in the partnership property to be proportionate to their respective contributions to the capital.

The complaint alleged the following facts: The parties carried on business in conformity with the agreement until February 1, 1888, when the defendant took exclusive possession of all the partnership business, stock, books and accounts, and of the premises where the business was carried on, and ever afterwards prevented the plaintiff from participating in any manner in the business or deriving any benefits therefrom. The plaintiff until that date performed his part of the agreement, and was ever after ready and willing to perform it, and so informed the defendant. From that date, the defendant wrongfully, and in fraud of the plaintiff's rights, carried on and controlled the partnership business for his own exclusive benefit, and applied to his own use from the proceeds and profits of the same large sums of money, exceeding the proportion to which he was entitled. On January 1, 1890, the defendant, without the plaintiff's knowledge or assent, sold and delivered to the Bast-Marshall Mercantile Company all the assets and property of the partnership. The complaint prayed for a dissolution of the partnership, the appointment of a receiver, an injunction against interfering with the property, its application to the payment of the partnership debts and a division of the remainder between the partners, the setting aside and cancellation of any transfer or assignment to the Bast-Marshall Mercantile Company, and an account.

The defendant Karrick, in his answer, admitted the partnership, and his own taking possession on February 1, 1888; but denied the other allegations of the complaint; and alleged that the plaintiff mismanaged the business in various particulars specified, and that when the defendant took possession

the partnership was insolvent and heavily in debt, and the plaintiff was owing to it a large sum of money, and was insolvent, and the partnership was then dissolved by mutual consent.

The Bast-Marshall Mercantile Company was originally made a defendant, and filed a separate answer. But the plaintiff afterwards dismissed his suit as against that company; the case was referred, by consent of the remaining parties, to a referee to report his findings of fact and conclusions of law to the court; and at the hearing before the referee much evidence was introduced by either party in support of his allegations and denials.

On October 5, 1891, the referee made his report, in which he set forth all the evidence; and by which he found that the facts were as alleged in the complaint, and were not as alleged in the answer of Karrick; and stated an account, resulting as follows:

| | | |
|---|---:|---:|
| Unadjusted and undivided profits January 1, 1890, including $2616.25 then uncollected by defendant | $22,858 | 18 |
| Profits realized after January 1, 1890 | 99 | 90 |
| Wrongfully disbursed by defendant after that date | 379 | 50 |
| | 23,337 | 58 |
| Unavoidable losses after January 1, 1890 | 2,005 | 12 |
| Net profits | 21,332 | 46 |
| Of which, plaintiff is entitled to one half | 10,666 | 23 |
| Capital put by plaintiff into the business | 5,208 | 89 |
| | 15,875 | 12 |
| Due from plaintiff to defendant on note mentioned in partnership agreement, without interest | 5,000 | 00 |
| Principal sum due to plaintiff | 10,875 | 12 |
| Interest at eight per cent yearly from January 1, 1890, to October 5, 1891, on $8258.87, the difference between $10,875.12 and $2616.25 uncollected January 1, 1890 | 1,165 | 41 |
| Total amount due to plaintiff | $12,040 | 53 |

From the findings of fact the referee concluded, as matter of law, that the partnership was not dissolved; but that it expired February 3, 1891, according to the terms of the agreement; that the profits and losses of the partnership business should be divided equally between the parties, after crediting each with his advances to and investments in the partnership; and that the sum of $12,040.53 was therefore owing to the plaintiff. The court confirmed the referee's findings of fact and conclusions of law, and entered a decree accordingly.

The defendant appealed to the Supreme Court of the Territory, which adopted the findings of fact in the district court, and held that, for the reasons stated in its opinion, (the material part of which upon this point is copied in the margin,[1]) the defendant could not dissolve the partnership,

---

[1] "Where the partnership is merely at will, the right of one partner to terminate it must be conceded; but where by agreement it is to continue for a time stipulated, the party seeking a dissolution before the expiration of the time ought in justice at least be required to act in good faith, and at a reasonable time, and in a reasonable manner. In the case of a partnership for a stipulated time of duration, where the business has been established, is becoming profitable, and has good future prospects, to allow one of the partners *sua sponte* to expel the other and dissolve the partnership, with a view to appropriate the business to himself, would be to adopt a doctrine at once inequitable, and unsupported by either reason or justice. There seems to be no good reason why a person should be allowed to commit a breach of his contract in such case, while in all other cases of flagrant violation, not within the partnership, he would be compelled to specifically perform, if it was within his power to do so. Why should a partner be thus allowed to ruin the business of the firm from mere caprice, or of his own volition, without cause, and in violation of his agreement, and sacrifice the entire object of the partnership? That such a violation may entitle the injured partner to damages is no answer, for damages, in many cases, must necessarily prove to be utterly inadequate to compensate for the destruction of a profitable and growing business; and, besides, this mode of redress is usually slow and unsatisfactory, and is not a remedy that will or can do complete justice between the parties. Where there is such a breach between the parties as to render continuance impossible, or when dissension has dispelled the hopes, prospects and advantages which induced its formation, or if for any just cause the partnership ought to be dissolved before the expiration of the term, then a court of equity is competent to grant relief. But it would scarcely seem to come within the principles of justice to permit one partner to expel another from a profitable business

without reasonable cause, and without the plaintiff's consent, before the expiration of the term stipulated in the partnership articles; and therefore that the partnership had not

---

for some real or fancied wrong or mismanagement, and then continue the business himself, and profit by his own wrong; responsible only in damages.

"Mr. Justice Story, in his Commentaries on the Law of Partnership, § 275, speaking of the power of one partner to dissolve the partnership where the time of duration is stipulated, says : 'In cases where the partnership is by the agreement to endure for a limited period of time, the question whether it may within the period be dissolved by the mere act or will of one of the ·partners, without the consent of all the others, does not ·seem to be absolutely and definitely settled in our jurisprudence, although it would not seem, upon principle, to admit of any real doubt or difficulty. Whenever a stipulation is positively made that the partnership shall endure for a fixed period, or for a particular adventure or voyage, it would seem to be at once inequitable and injurious to permit any partner at his mere pleasure to violate his engagement, and thereby to jeopard, if not sacrifice, the whole objects of the partnership; for the success of the whole undertaking may depend upon the due accomplishment of the adventure or voyage, or the entire time be required to put the partnership into beneficial operation.' In *Gerard* v. *Gateau*, 84 Illinois, 121, Mr. Justice Scott, delivering the opinion of the court, said: 'A party who is the author of the ill feeling between· himself and partners ought not to be permitted to make the relation he has induced, the ground of a dissolution of the partnership. His conduct may have been taken with a view to that very result, and it would be inequitable to allow him advantage from his own wrongful acts. It would allow one partner, at his election, to put an end to his own deliberate contract, when the other has been guilty of no wrongful act or omission of duty. The results flowing from a premature dissolution of a partnership might be most disastrous to a partner who had embarked his capital in the enterprise.' So in *Henn* v. *Walsh*, 2 Edw. Ch. 129, the vice chancellor said : 'A partnership agreement, like any other, is binding upon the parties; and they must adhere to its terms. Neither partner is at liberty to recede from it against the will of the other, without a sufficient cause. Mere dissatisfaction by one partner will not justify him in filing a bill for a dissolution where, by the express agreement, it is to continue for a definite term; and this court will not interfere to dissolve the contract upon such ground.'

"The views thus expressed have the apparent support of most elementary writers, and seem to be in conformity with the doctrine prevailing in England. The contrary doctrine, if not indefensible, is founded on reasons exceedingly artificial. It is based on the ground that one partner has the right to found his claim, real or otherwise, to immediate safety and indemnity, on an obvious injury to the interests and rights of another, which is alike inequitable and unjust; and we think it is not supported by the

been dissolved by the acts of the defendant; but that, as each partner was permitted by those articles to draw out of the partnership $125 a month for personal expenses, the defendant should have been allowed the sum of ·$3000 as personal expenses for the two years during which he conducted the. business of the firm; and that the judgment should be modified by deducting one half of this sum, and, so modified, be affirmed for the sum of $10,540.53. 9 Utah, 236. The defendant appealed to this court.

Mr. J. M. Wilson for appellant. Mr. J. G. Sutherland, Mr. A. Howat and Mr. C. W. Bennett were on his brief.

Mr. Joseph L. Rawlins for appellee. Mr. Parley L. Williams was on his brief.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

Much of the argument for the appellant was devoted to a discussion of conflicting evidence, which is not open to examination by this court, its authority upon appeal from the Supreme Court of a Territory being limited to the question whether the facts found by that court support its judgment. Haws v. Victoria Co., 160 U. S. 303; Harrison v. Perea, ante, 311.

The principal question of law discussed in the opinion of the Supreme Court of the Territory, and at the argument in this court, was whether a partnership, which by the copartnership articles is to continue for a specified time, can be dissolved by one partner at his own will without the assent of the other before the expiration of that time.

It is universally conceded that a contract of partnership, containing no stipulation as to the time during which it shall

weight of authority. Story on Partnership, §§ 275, 276; Story Eq. Jur. § 673; Lindley on Partnership, [bk. 4, c. 1, (5th ed.)] p. 575, § 2; Ferrero v. Buhlmeyer, 34 How. Pract. 33; Pearpoint v. Graham, 4 Wash. C. C. 232; Peacock v. Peacock, 16 Ves. 49; Cash v. Earnshaw, 66 Illinois, 402; Van Kuren v. Trenton Co., 13 N. J. Eq. 302."

continue in force, does not endure for the life of the partners, or of either of them, nor for any longer time than their mutual consent, but may be dissolved by either partner at his own will at any time. *Peacock* v. *Peacock*, 16 Ves. 49; *Crawshay* v. *Maule*, 1 Swanst. 495; *Neilson* v. *Mossend Iron Co.*, 11 App. Cas. 298; 3 Kent Com. 53; Story on Partnership, § 269.

Upon the question how far the status or relation of a partnership, which by the partnership agreement is to continue for a certain number of years, can be determined by one partner without the consent of the other before the expiration of that time, there has been some difference of opinion.

The principal reasons and authorities in favor of the position that a contract of partnership for a definite time cannot be dissolved at the mere will of one partner are stated or referred to in the opinion of the Supreme Court of the Territory in this case, reported in 9 Utah, 236.

Those which support the opposite view may be summed up as follows: A contract of partnership is one by which two or more persons agree to carry on a business for their common benefit, each contributing property or services, and having a community of interest in the profits. It is in effect a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for his copartner. *Meehan* v. *Valentine*, 145 U. S. 611. Every partnership creates a personal relation between the partners, rests upon their mutual consent, and exists between them only. Without their agreement or approval, no third person can become a member of the partnership, either by act of a single partner, or by operation of law; and the death or bankruptcy of a partner dissolves the partnership. 3 Kent Com. 25, 55, 58; *Wilkins* v. *Davis*, 2 Lowell, 511. So an absolute assignment by one partner of all his interest in the partnership to a stranger dissolves the partnership, although it does not make the assignee a tenant in common with the other partners in the partnership property. *Bank* v. *Carrolton Railroad*, 11 Wall. 624, 628; *Marquand* v. *New York Manuf. Co.*, 17 Johns. 525, 528, 535. No partnership can efficiently or beneficially

carry on its business without the mutual confidence and co-operation of all the partners. Even when, by the partnership articles, they have covenanted with each other that the partnership shall continue for a certain period, the partnership may be dissolved at any time, at the will of any partner, so far as to put an end to the partnership relation and to the authority of each partner to act for all; but rendering the partner who breaks his covenant liable to an action at law for damages, as in other cases of breaches of contract. *Skinner* v. *Dayton*, 19 Johns. 513, 538; 3 Kent Com. 54, 55, 62; *Cape Sable Co.'s Case*, 3 Bland, 606, 674; *Monroe* v. *Conner*, 15 Maine, 178, 180; *Mason* v. *Connell*, 1 Whart. 381, 388; *Slemmer's Appeal*, 58 Penn. St. 168, 176; *Blake* v. *Dorgan*, 1 Greene (Iowa), 537, 540; *Solomon* v. *Kirkwood*, 55 Mich. 256, 259, 260. According to the authorities just cited, the only difference, so far as concerns the right of dissolution by one partner, between a partnership for an indefinite period and one for a specified term, is this: In the former case, the dissolution is no breach of the partnership agreement, and affords the other partner no ground of complaint. In the latter case, such a dissolution before the expiration of the time stipulated is a breach of the agreement, and as such to be compensated in damages. But in either case the action of one partner does actually dissolve the partnership.

A court of equity, doubtless, will not assist the partner breaking his contract to procure a dissolution of the partnership, because, upon familiar principles, a partner who has not fully and fairly performed the partnership agreement on his part has no standing in a court of equity to enforce any rights under the agreement. *Marble Co.* v. *Ripley*, 10 Wall. 339, 358. But, generally speaking, neither will it interfere at the suit of the other partner to prevent the dissolution, because, while it may compel the execution of articles of partnership so as to put the parties in the same position as if the articles had been executed as agreed, it will seldom, if ever, specifically compel subsequent performance of the contract by either party, the contract of partnership being of an essentially personal character. Batten on Specific Per-

formance, 165–167; Lindley on Partnership, bk. 3, c. 10, § 4; Pomeroy on Specific Performance, § 290; *Scott* v. *Rayment,* L. R. 7 Eq. 112; *Satterthwait* v. *Marshall,* 4 Del. Ch. 337, 354; *Reed* v. *Vidal,* 5 Rich. Eq. 289; *Somerby* v. *Buntin,* 118 Mass. 279, 287. Especially where, by the partnership agreement, as in the case at bar, the defendant is to supply all or most of the capital, and the plaintiff is to furnish his personal services, the agreement cannot be specifically enforced against the plaintiff, and will not be enforced against the defendant. *Stocker* v. *Wedderburn,* 3 K. & J. 393, 404; *Buck* v. *Smith,* 29 Michigan, 165.

In the somewhat analogous case of a contract of hiring and service, it is well settled that a court of equity cannot compel the performance of the service, although it may in some cases enforce a negative stipulation not to serve any third person within the time agreed. *Dietrichsen* v. *Cabburn,* 2 Phil. Ch. 52, 59, and cases cited; *Lumley* v. *Wagner,* 1 D. M. & G. 604; *Wolverhampton & Walsall Railway* v. *London & Northwestern Railway,* L. R. 16 Eq. 433, 440; *Whitwood Chemical Co.* v. *Hardman,* (1891) 2 Ch. 416; *Davis* v. *Foreman,* (1894) 3 Ch. 654; 13 Law Quarterly Review, 306; *Tobey* v. *Bristol,* 3 Story, 800, 824.

We are not prepared, therefore, to assent to the opinion of the court below that a partnership for a definite time cannot be dissolved by one partner at his own will, and without the consent of his copartner, within that time; and consequently that the partnership between these parties was not dissolved on February 1, 1888, when the defendant assumed exclusive possession and control of the business and property of the partnership, and excluded the plaintiff from any participation therein. But it is unnecessary to express an opinion upon this point, because, however it might be decided, it would not affect the conclusion in favor of the plaintiff in the present case.

Even if the partnership should be considered as having been actually dissolved at that date, yet the dissolution did not put an end to the plaintiff's right to his share in the property and the profits of the partnership. In a case in which both parties,

in· their pleadings, assumed the partnership to .have been dis-
solved, this court, speaking by Mr. Justice Miller, held that
drunkenness and dishonesty on the part of one partner and his
consequent exclusion from the business did not authorize his
copartner, " of his own motion, to treat the partnership as
ended and to take himself all,the benefits.of their joint labors
and joint property," or exempt him from responsibility to ac-
count to the excluded partner. *Ambler* v. *Whipple*, 20 Wall.
546, 555, 557. And in a later case, the court, speaking by
Mr. Justice Woods, said : ".However the question may be de-
cided, whether one partner may by his own mere will dissolve
a partnership formed for a definite purpose or period, it is
clear that upon such a dissolution one partner cannot appro-
priate to himself all the partnership assets, or turn over the
·share of his partner to another with whom he proposes to
form a new partnership." *Pearce* v. ·*Ham*, 113 U. S. 585, 593.

A partner who assumes to dissolve the partnership, before
the end of the term agreed on in the partnership articles,. is
liable, in an action at law against him by his copartner for the
breach of the agreement, to respond in damages for the value
of the profits which the plaintiff would otherwise have re-
ceived. *Bagley* v. *Smith*, 10 N. Y. 489 ; *Dennis* v. *Maxfield*,
10 Allen; 138. In a court of· equity, a partner who,.after a
dissolution of the partnership, carries on the business with the
partnership property is liable, at the election of the other part-
ner or his representative, to account for the profits thereof,
subject to proper allowances. *Ambler* v.*Whipple*, and *Pearce*
v. *Ham*,.above cited ; *Hartman* v. *Woehr*, 3 C. E. Green (18
N. J. Eq.), 383 ; *Freeman* v. *Freeman*, 136 Mass. 260 ; *Holmes*
v. *Gilman*, 138 N. Y. 369 ; 3 Kent Com. 64.

In the case at bar, by the terms of the agreement in writ-
ing, dated February 3, 1886, under which the partnership was
formed, it was to continue for five years, that ·is to say, until
February 3, 1891 ; the plaintiff was to contribute $5000, and
the defendant $20,000, to the capital ; the defendant lent the
plaintiff the sum of $5000, ·for which the plaintiff gave his
promissory note, payable at the end of the five years ; the plain-
tiff was to have the general management of the business ; each

partner might draw out not exceeding $125 a month for personal expenses; the profits and losses were to be shared equally, and neither partner was to have any other compensation for services; and their title in the partnership property was to be in proportion to their contributions to the capital.

By the facts found by the courts of the Territory, it appears that the business was carried on, according to the agreement, for two years, or until February 1, 1888; that the defendant then took exclusive possession of the property and the business of the partnership, and thenceforth carried on the business profitably and for his own benefit, and excluded the plaintiff from any participation in the business or the profits, although the plaintiff was, as he informed the defendant, ready and willing to perform his part of the partnership agreement; and the defendant on January 1, 1890, a year before the expiration of the term agreed on, and without the plaintiff's knowledge or assent, sold out and delivered to a stranger all the property of the partnership.

The judgment of the court of first instance charged the defendant with the amount of capital paid by the plaintiff into the partnership, deducting, however, the whole amount of the plaintiff's promissory note payable to the defendant at the end of the term of five years; and further charged the defendant with half of the net profits of the business during the two years that he carried it on after ousting the plaintiff and before selling out to a stranger, and with half of the wrongful disbursements of the defendant afterwards. The Supreme Court of the Territory, affirming the judgment in other respects, held that, as by the agreement of partnership each partner was permitted to draw out a certain sum monthly for personal expenses, the defendant was entitled to such an allowance monthly for the two years during which he conducted the business, and the same should be deducted from the profits to be accounted for, and the judgment in favor of the plaintiff reduced accordingly. The court made no such allowance to the plaintiff. And, in accordance with the partnership articles, neither partner was allowed any compensation for his services other than his half of the profits.

It does not appear to have been suggested by the defendant in either of the courts of the Territory, and could not successfully be contended, that in estimating the damages or the profits which the plaintiff was entitled to recover, any deduction should be made by reason of his not having performed during those two years the services, as manager of the business, which he had agreed by the partnership articles to perform. No finding as to the value of such services was made or requested; and the defendant himself, not only refused to let the plaintiff, as he offered to do, perform them during those two years, but, in his answer and at the hearing before the referee, insisted that the plaintiff's services as manager were of no benefit to the partnership.

The result is that, whether the partnership should or should not be considered to have been dissolved when the defendant ousted the plaintiff and assumed the exclusive possession and control of the property and business of the partnership, the defendant has shown no ground for reversing or modifying the final decree of the Supreme Court of the Territory.

*Decree affirmed.*