George G. PAGONIS, et al., Plaintiffs,

v.

Thomas R. DONNELLY, Jr., Defendant.

Civil Action No. 94–2419 (JR).

United States District Court,
District of Columbia.

Dec. 4, 1995.

Edward F. Canfield, Richard S. Harrell, Canfield & Smith, Washington, DC, for Plaintiffs.

Frederick W. Chockley, Robert D. Lystad, Baker & Hostetler, Washington, DC, Albert B. Krachman, Bracewell & Patterson, L.L.P., Washington, DC, for Defendant.

*MEMORANDUM*

ROBERTSON, District Judge.

Mr. Pagonis and Mr. Donnelly were 50–50 partners in a lobbying firm that is now defunct and are bitterly engaged in a dispute about the manner in which their business relationship came to an end. In December 1993 Mr. Donnelly resigned from the Pagonis & Donnelly Group, and in January 1994, he began to conduct business from his own firm, the Donnelly Group. Important clients of the firm went with him, employees of the firm eventually relocated with him, the business of the Pagonis & Donnelly Group dried up, and debts of the Pagonis & Donnelly Group remain unpaid.

Mr. Pagonis' suit against Mr. Donnelly alleges conversion and misappropriation of corporate assets (Count 1), breach of fiduciary duty and unjust enrichment (Count 2), wrongful diversion of corporate opportunities (Count 3), tortious interference with contracts and future business advantage (Count 4), and claims for advances and monies owed (Count 5). Mr. Donnelly's counterclaim seeks reimbursement for monies he has paid to satisfy what he asserts is an obligation of the Pagonis & Donnelly Group.

Before me is Mr. Donnelly's motion for partial summary judgment. The motion, if granted, would result in a judgment in Mr. Donnelly's favor on his counterclaim and the dismissal of all but a few items disputed under plaintiff's claims for advances and monies owed (Count 5). Because there appear to be genuine issues of fact material at least as to the breach of fiduciary duty claim, however, the motion for summary judgment must be denied.

Mr. Donnelly's factual recitation is essentially undisputed and is as follows: Pagonis & Donnelly Group, Inc., was incorporated in

1986 as a subchapter S corporation in the State of New Jersey. Plaintiff George G. Pagonis and defendant Thomas R. Donnelly, Jr., held equal shares in the corporation and shared equally in the corporation's profits. There were no shareholder or employment agreements. The business operated successfully from 1986 through part of 1991. Beginning in 1991 and continuing through 1993 Mr. Pagonis' contribution to the corporation, in terms both of business development and the work of servicing clients, dropped significantly. The two men discussed the possibility that a third party might acquire Mr. Pagonis' shares in the corporation so that Mr. Pagonis might retire, but no buyer materialized. After further discussion of Mr. Pagonis' intent to retire, Donnelly proposed on September 23, 1993 an arrangement by which Mr. Pagonis would leave the firm in exchange for a package of financial considerations. Mr. Pagonis declined to discuss those terms. Mr. Donnelly then made a recommendation for a cash buy out of Mr. Pagonis' stock. On December 22, 1993, after further unsuccessful negotiations, Mr. Donnelly wrote to Mr. Pagonis resigning as an officer and employee of the Pagonis & Donnelly Group effective December 31, 1993, and resigning as a director of the Pagonis & Donnelly Group effective January 6, 1994.

What Mr. Donnelly does not discuss in his motion for summary judgment—and what is the subject of ongoing discovery—is Mr. Pagonis' allegation that, on December 3, 1993, Mr. Donnelly unilaterally drew $10,000 against the Pagonis & Donnelly Group corporate line of credit at Century National Bank and deposited it the same day in a new business checking account opened the same day in the name of Thomas R. Donnelly, Jr., d/b/a The Donnelly Group. Mr. Donnelly also evidently said something to a loan officer at Century National Bank on or before December 22, 1993, that led to the approval of a new line of credit for Mr. Donnelly and his wife for working capital for a "successor company" to Pagonis & Donnelly that would be named The Donnelly Group. That specific conduct on the part of Mr. Donnelly, which Mr. Pagonis alleges was done secretly or at least without his knowledge, is at the core of Mr. Pagonis' claim that Mr. Donnelly violated his fiduciary duty to Pagonis & Donnelly and to Mr. Pagonis himself.

The fiduciary duties of a corporation's officers and directors are determined by the law of the state of incorporation. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 549, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949); *Weiss v. Kay Jewelry Stores, Inc.,* 470 F.2d 1259, 1268 (D.C.Cir. 1972). In New Jersey, where Pagonis & Donnelly is incorporated, the relationship of principals in close corporations is that of partners or co-venturers. *68th St. Apts., Inc. v. Lauricella,* 142 N.J.Super. 546, 362 A.2d 78, 85, *aff'd* 150 N.J.Super. 47, 374 A.2d 1222 (1977), *citing Helms v. Duckworth,* 249 F.2d 482, 486–87 (D.C.Cir.1957) (opinion by Burger, J.). The standard of fiduciary duty that partners or co-venturers owe to one another is one of "utmost good faith and loyalty." *68th St. Apts., Inc.,* 362 A.2d at 86, *quoting Donahue v. Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578, 328 N.E.2d 505, 515 (1975).

In New Jersey, in the absence of a contrary agreement, a partnership is deemed to be at will, and a partner may withdraw at any time without incurring liability. N.J.S.A. § 42:1–31(1)(b); *Karrick v. Hannaman,* 168 U.S. 328, 335, 18 S.Ct. 135, 138, 42 L.Ed. 484 (1897). This record does not establish that Mr. Donnelly withdrew or formally indicated his attention to withdraw from the Pagonis & Donnelly Group before December 22, 1993, however, and Mr. Donnelly does not suggest that he did. His undisclosed borrowing from a corporate line of credit for personal purposes three weeks prior to his withdrawal from the corporation, if established by competent evidence at trial, violated the "utmost good faith and loyalty" test. It remains to be seen what other acts or representations were made by Mr. Donnelly in the period leading up to his resignation on December 22, 1993. Genuine issues of material fact are therefore presented by this record, and the motion for summary judgment—at least as to the breach of fiduciary duty claim—cannot be granted.

That having been said, a serious question also appears on this record as to whether

plaintiff can prove that any damages resulted from the alleged breach of fiduciary duty. Plaintiff has cited no authority, and we have found none, suggesting that a finding of breach of fiduciary duty would require Mr. Donnelly to share with Mr. Pagonis the profits of the business he conducted after he formally withdrew from the Pagonis & Donnelly Group. Mr. Pagonis has not produced and apparently will not produce any evidence that Donnelly actually misappropriated client files, computer disks and directories. Mr. Donnelly was free to leave at will, and since none of the Pagonis & Donnelly Group's clients that ultimately wound up with the new Donnelly firm were tied to the Pagonis & Donnelly Group by enforceable contracts, it does not appear that Mr. Donnelly intentionally procured a breach of contract, *see Tuxedo Contractors, Inc. v. Swindell–Dressler,* 613 F.2d 1159, 1162 (D.C.Cir.1979); *Wiggins v. Hitchens,* 853 F.Supp. 505, 512 (D.D.C.1994). The prospect that Mr. Pagonis can prove wrongful diversion of corporate opportunities or tortious interference with contracts and future business advantage appears remote.

The money dispute between the parties thus appears to boil down to questions about who is responsible for the balance due on the line of credit with the Century National Bank; who was entitled to share in the profits from "Kay–Span" in 1989 (if Mr. Donnelly is correct the answer to that question would result in a $38,000 offset against $53,000 he took from the corporation for his children's college tuition); disagreements about progressively smaller amounts of money allegedly expended by Mr. Donnelly for personal expenses; disputes about who is responsible for unpaid obligations of Pagonis & Donnelly after Mr. Donnelly's departure; and disputes about bills rendered by the Donnelly Group to former Pagonis & Donnelly Group clients.

A trial of these detailed money issues will give one side or the other only a Pyrrhic victory, but because the motion for summary judgment must be denied—and unless the parties reach an accommodation—a trial there will be, beginning as scheduled at 9:30 a.m. on December 12, 1995. The Court has, however, set aside the afternoon of Thursday, December 7, for an intensive pretrial conference, beginning at 2:00 p.m., in chambers. At that time, counsel are required either to bring with them the principals in this litigation or to be able to represent that they have plenary settlement authority.