292 P.2d 845

**Arthur ENGELBRECHT, Appellant,**

**v.**

**John McCULLOUGH and George Gilling,
Appellees.**

No. 6040.

Supreme Court of Arizona.

Jan. 31, 1956.
Rehearing Denied Feb. 28, 1956.

John J. McCullough, Phoenix, for appellant.

Kramer, Roche & Perry and F. Haze Burch, Phoenix, for appellees.

STRUCKMEYER, Justice.

This appeal questions the propriety of a denial of certain ancillary relief sought by the appellant in an action for a dissolution and accounting of partnership affairs. Appellant, whom we shall hereafter call plaintiff, and appellees, whom we shall call defendants, on February 23, 1954, entered into a written partnership agreement to carry on the business of cesspool drilling and servicing for a period of two years. Differences arose between the partners re-sulting on April 8, 1954, in a written notice of dissolution addressed to plaintiff by defendants. By paragraph 11 of the partnership agreement it was provided:

"11. It is mutually agreed by the partners hereto that in the event of the withdrawal of a partner or partners for any reason, or the termination of this partnership by death or any cause, the partners wishing to continue the business shall have the right to purchase the assets of the partner retiring from the business, based on the book value of the partnership at the time of the termination of said partnership, and the partner or partners purchasing said assets of the other partner or partners shall have a period of twenty-four months in which to pay for said assets."

The defendants elected to buy out plaintiff and continue the business under the provisions of the foregoing paragraph. Seemingly they have taken possession of the partnership assets and have continued the business under its original name.

This action was commenced on June 11, 1954, originally seeking a dissolution and an accounting. On the same day plaintiff obtained from the lower court an order directing the defendants to appear and show cause why an accounting should not be had of all the dealings and transactions of the partnership. The hearing on this order to show cause was continued from time to time until October 14, 1954. On

October 1st plaintiff filed a second amended complaint from which it appears that in addition to asking for a decree of dissolution of the partnership and an accounting, the court was petitioned to "order the defendants to restore the plaintiff to his work and activities under the partnership agreement." It is apparent from the contents of the second amended complaint that plaintiff now seeks to treat the dissolution of April 8, 1954, as wrongful and the partnership as continuing. A third order to show cause was secured primarily directed to obtaining mandatory orders of the court to enforce a continuation of the partnership agreement. This third order to show cause was consolidated for hearing with the original order. At the hearing on October 14th the court directed the defendants to file a full and complete accounting from the beginning of the partnership to the then "present time" and an inventory of all stocks and materials on hand, debts outstanding and contracts to be completed, and further ordering that plaintiff be allowed a full and complete inspection of all books of account. All other relief requested in both orders to show cause was denied including all those matters which sought to restore the plaintiff to his "work and activities" under the partnership agreement.

It should be emphasized that it is now plaintiff's theory that because of the alleged wrongful dissolution, the partnership agreement is still in existence and that he is entitled to invoke the power of the court to specifically enforce its terms. The lower court repudiated such theory, apparently treating the partnership as dissolved on April 8th, whether wrongfully or rightfully and issuing only such orders as were consistent with the winding up of its affairs.

Plaintiff sets forth six assignments of error directed to the failure of the court to hear evidence designed to support the theory of his second amended complaint and the additional relief requested in the third amended order to show cause. We think there are several reasons why plaintiff cannot prevail. First, by express terms of the agreement each partner agreed to "diligently employ himself in the business of said partnership." As such it is a contract for personal services. By statute in this jurisdiction, Section 26–104, A.C.A.1939, an injunction cannot be granted to prevent the breach of a contract, performance of which would not be specifically enforced. A contract for personal services will not be specifically enforced. Miller v. City of Phoenix, 51 Ariz. 254, 75 P.2d 1033. Hence the ancillary relief sought was beyond the power of the court to grant.

Second, while plaintiff argues that the partnership is still in existence because a partnership for a fixed term may not be terminated by notice, we think that the better reasoned cases and the weight of authority are to the contrary. Karrick v. Hannaman, 168 U.S. 328, 18 S.Ct. 135,

42 L.Ed. 484; Atha v. Atha, 303 Mich. 611, 6 N.W.2d 897; Lunt v. Van Gorden, 224 Iowa 1323, 278 N.W. 631; McCollum v. McCollum, Tex.Civ.App., 67 S.W.2d 1055. For example, in Michigan where the Uniform Partnership Act permitting a dissolution at any time has been adopted, the court nonetheless pointed out:

"* * * this partnership can be dissolved at the instance of either partner at any time, under the statute and the rule as stated in Solomon v. Kirkwood, 55 Mich. 256, 21 N.W. 336, 337, as follows:

"'The right of a partner to dissolve, it is said, "is a right inseparably incident to every partnership. There can be no such thing as an indissoluble partnership. Every partner has an indefeasible right to dissolve the partnership, as to all future contracts, by publishing his own volition to that effect; and after such publication the other members of the firm have no capacity to bind him by any contract. Even where the partners covenant with each other that the partnership shall continue for several years, either partner may dissolve it the next day by proclaiming his determination for this purpose; the only consequence being that he thereby subjects himself to a claim for damages for a breach of his contract. The power given by one partner to another to make joint contracts for them both is not only a revocable power, but a man can do no act to divest himself of the capacity to revoke it." Skinner v. Dayton, 19 Johns, N.Y., 513, 538 [10 Am.Dec. 286].'" Atha v. Atha, supra, 6 N.W. 2d 899.

That the court should not enjoin the dissolution is clearly established.

"A court of equity, doubtless, will not assist the partner breaking his contract to procure a dissolution of the partnership, because upon familiar principles, a partner who has not fully and fairly performed the partnership agreement on his part has no standing in a court of equity to enforce any rights under the agreement. [Citing cases.] But, generally speaking, neither will it interfere at the suit of the other partner to prevent the dissolution, because, while it may compel the execution of articles of partnership so as to put the parties in the same position as if the articles had been executed as agreed, it will seldom, if ever, specifically compel subsequent performance of the contract by either party, the contract of partnership being of an essentially personal character. [Citing cases.]" Karrick v. Hannaman, supra, 168 U. S. 335, 18 S.Ct. 138.

In McCollum v. McCollum, supra, the Supreme Court of Texas said:

"This injunction, in effect, attempts to prevent the dissolution of a part-

nership. Under the law a partnership calling for the personal services of the partners can always be dissolved, even though it constitutes a breach of contract. The right to dissolve may not exist but the power to dissolve always exists. * * *" 67 S.W.2d 1056.

In the present case the partnership was dissolved on April 8, 1954; the partnership itself continued to exist thereafter only for the purpose of winding up its affairs.

"In general a dissolution operates only with respect to future transactions; as to everything past the partnership continues until all pre-existing matters are terminated. [Citing cases.] * * *" Cotten v. Perishable Air Conditioners, 18 Cal.2d 575, 116 P.2d 603, 604, 136 A.L.R. 1068.

To this end the lower court did not err in issuing such order which tended to promote the dissolution and in denying others inconsistent therewith.

Plaintiff further complains of the quashing of a temporary restraining order issued without notice under the following circumstances. On September 30, 1954, plaintiff secured the issuance of a temporary restraining order from a judge other than the one before whom the order to show cause was pending. This order enjoined and restrained the defendants from draw-ing any funds by check without the signature of the plaintiff Engelbrecht or paying "any sums whatever by cash or otherwise from the partnership". It was secured without notice to the defendants under the provisions of Section 26–106, A.C.A.1939, providing that the court or a judge thereof may issue a temporary restraining order without notice if it appears that immediate and irreparable injury is likely to ensue. On the following day and on application of the defendant Gilling, the judge who issued the restraining order quashed it without notice to plaintiff.

While plaintiff is correct in his assertion that by statute, Section 26–114, A.C.A.1939, motions to dissolve injunctions can be heard only upon notice to the opposite party, we think the trial court did not commit prejudicial error in summarily quashing the restraining order. The court clearly exceeded its authority in issuing the order since the effect was to compel the continuation of the partnership contract, contrary to the provisions of Section 26–104, cited supra. Inasmuch as it was improvidently issued, there could not be, and was not, any prejudicial error in quashing it forthwith.

Affirmed.

LA PRADE, C. J., and UDALL, WINDES and PHELPS, JJ., concur.